Our third case for argument this morning is United States v. Dyer. Mr. Henderson. Good morning, and may it please the Court. I'm Peter Henderson. I represent Todd Dyer. Before I get to the merits, I'd like to talk. The government has raised the issue of waiver in Rule 59 in their Rule 28J letter. The two circuit court of appeals that have considered this issue in precedential opinions have found that Rule 11D itself serves as an independent basis to move to withdraw a plea, notwithstanding the plea being entered before a magistrate judge. I think the reasoning in those cases is correct. Otherwise, we would have a situation where criminal defendants cannot, even for a fair and just reason, withdraw their pleas after pleading guilty, so long as that plea was before a magistrate judge. There are other problems with the argument, including that it was raised in the 28J letter, but I think we can avoid waiver just because Rule 11D is an independent basis on which to move to withdraw a plea. On the merits, I think the most important point we've tried to express in the briefs is from this Court several years ago in the Fountain case, where the Court noted that it's axiomatic that the required dialogue in a Rule 11 colloquy will vary from case to case. Certainly the judge needs to go through all of the requirements of Rule 11, but the essence of a guilty plea is that it is a grave and solemn act that should only be accepted with care and discernment. And in this case, this is not a typical guilty plea. We have a self-represented defendant, unmedicated, with bipolar disorder, who went to trial for two days, where the district judge repeatedly told him, or at least implied, that his case was worthless. This was hogwash, this was balderdash, all he was doing was trying to obfuscate. And in one instance, told that to him in front of the jury, that he was just playing games with everybody. I don't think it's a coincidence that after that day of trial, he threw in the towel and gave up. And what happened the next day was the magistrate judge engaged him in this colloquy, but didn't ask any probing questions into what was going on. We went through, you know, you have these rights, government, please give a factual basis, and the only responses Mr. Dyer gave were, yes sir, yes sir, guilty, guilty, and we're over. You see at the end of the hearing, in fact, this was... That's not a problem, though, is it, really? Well, I think it is, because of the circumstances of the case. There is not a statement in the record as to why Todd Dyer thinks himself guilty, and yet he stands guilty of four federal felonies. The factual basis that the government provided is completely opposite of the way that Mr. Dyer, for two years and even before he was indicted, described the setup of these companies, of his businesses. So there's a problem. The other problem is that the judge actually never asked questions about Mr. Dyer's mental state. There was a question about, well, are you under the influence of alcohol, under the influence of drugs? And he said no. But the court knew that this guy was sort of like a bull in a china shop, and he had told the court a few weeks before this plea, look, I can't, I'm overwhelmed, I'm not ready for trial. One of the reasons for that is my bipolar disorder, which prevents me at times from concentrating. And we know about bipolar disorder. We've got the mania on the one hand and the depression on the other, so that on some days somebody so afflicted can't make rational decisions about it. Is there any reason to believe that the day on which he pleaded guilty was one of those days when he couldn't make rational decisions? There is, because his decision on that day utterly contradicts everything else that he did in the last two years. That happens every time somebody pleads not guilty and then later pleads guilty. That's not going to be sufficient to indicate irrational behavior. Is there anything about the plea colloquy which implies irrational thinking? The problem is that the answer is no, because the record is silent. No, the plea colloquy is not silent. But the magistrate judge never inquires into why are you doing this? What, you know, are you feeling okay? Do you have, have you ever been hospitalized for a psychiatric illness? Do you have any psychiatric illnesses? That's the problem. So, no, the record. How much do you want the magistrate judge or the district judge to go in and cross-examine what amounts to admission of guilt? So I think that what this court said, again, is that the dialogue is going to vary from case to case. This is a case in which there needs to be. This guy is not new to the game, is he? No, he's not. Absolutely not. So he's able to play the game, as somebody said, Judge Chatham or maybe. Well, and so that's why the magistrate judge needs to figure out why are you pleading guilty? Are you playing the game? Are you just doing this to delay the trial? You'll get the trial thrown out, and then you'll come back and withdraw your plea. Or are you doing it because. . . Well, what do you suppose the answer to that would be? Well, the answer would be no, I'm pleading guilty because I'm guilty. Which is. . . And then we would have a record, right? What's the factual basis? Unless he was confused and didn't really understand the question. Sure. No, I understand sort of how the court is seeing this, but I think it's a problem when we have a defendant like Mr. Dyer, who is so sort of truculent throughout the pretrial and up to trial, and so earnest in his expression of innocence, to come in and to resolve these cases in 20 or 30 minutes without him saying a word about why he's guilty. I don't think that that is the level that we want courts to aspire to, in terms of making sure that when you plead guilty to federal felonies, you're doing so knowingly and voluntarily. But I'll save the rest of my time for rebuttal, if there's nothing else. Thank you. Certainly, counsel. Mr. Proctor. Thank you, Your Honors, and may it please the court, Benjamin Proctor for the United States. Judge Easterbrook, you nailed it on the head. On the day he pled guilty, was. . . All I did was ask a question. My apologies. I believe your question went to a key point, was on the day he pled guilty, was his bipolar disorder impacting or clouding his judgment? And the answer, according to Todd Dyer himself, is no. The Rule 11 Clause would comply with every aspect of Rule 11. And the judge set forth the penalties, the nature of the charges. Let me particularly ask Mr. Dyer, are you on any medications today? Is there anything. . . I see you seem to be fully in the moment. Is that a fair characterization of you today? Yes, sir, it is. I'm not on any medications. Mr. Dyer never indicated anything to the contrary. And Magistrate Judge Jones, who conducted the colloquy, later made specific findings that Mr. Dyer was candid, lucid, intelligent, fully capable of entering a guilty plea and respectful in not acknowledging his guilt. The plea colloquy, there was no chaos. There was nothing uncommon about this particular colloquy. Now, with regard to the timing of the guilty plea, this followed, yes, two days of trial, and the evidence was coming in, and Mr. Dyer's trial was not going very well. The witnesses were testifying that Alan Todd, which was the alias he was using to hide his criminal past, had sold them fictitious promises. And after that, Mr. Dyer approached the government and said, I want to plead guilty. And we spent many hours putting together written comprehensive plea agreements in which Mr. Dyer obtained several concessions from the government, including dismissal of one of the separate indictments on a separate fraud scheme, the ability or government recommendation for concurrent sentences in the two cases that he was pleading guilty to, government recommendation that he be allowed to remain on bond, a government wouldn't oppose reasonable request for travel. These were all important to Mr. Dyer, and all concessions that were made as part of the guilty plea process here. Now, after the Rule 11 colloquy, Mr. Dyer waited three months until the day before sentencing to say that I'm not actually guilty, I'm innocent. That was his claim. Everybody's lying. He never challenged the Rule 11 colloquy. He never challenged his statements before Judge Jones. In fact, he basically admitted, yeah, I did all these things during the Rule 11 colloquy. I admit I knew what was going on, but I'm innocent, and you shouldn't sentence an innocent man. During those three months, he cooperated with the pre-sentence writer, described his bipolar disorder as something that, I've been diagnosed with it. Sometimes it impacts my ability to concentrate. I haven't taken any medication for it since 2007, over 10 years ago. I don't feel it impacts my life in a great manner. I don't see any counseling for it. Those are his words to the pre-sentence writer. In the end, what the district judges did is they considered his arguments that I'm innocent, everybody's lying, and they noted that they was conflicted directly with his sworn statements under oath during the Rule 11 colloquy. As this court has noted, if a district judge accepts the sworn statements of a defendant under Rule 11 colloquy, contrary statements aren't going to get him very far on appeal. With regard to Mr. Dyer's behavior, three federal judges spent a lot of time with Mr. Dyer. Magistrate Jones oversaw pretrial proceedings in these cases for two years, had over 12 substantive hearings with Mr. Dyer and interacted with Mr. Dyer. Judge Stantmuller oversaw two days of trial in which Mr. Dyer presented arguments, presented opening arguments, cross-examined witnesses, used various documents to try to impeach these witnesses, all in the days leading up to his guilty plea. Judge Pepper, on the day of sentencing, in that case, he filed another motion to withdraw his guilty plea in the case that was assigned to Judge Pepper. Judge Pepper turned that sentencing hearing into an evidentiary hearing, the first part of that sentencing hearing, into an evidentiary hearing on his motion to dismiss. That's at Appendix 26-42, in which she drills down on Mr. Dyer, specifically questioning him. You told Judge Jones you were pleading guilty because you were in fact guilty, correct, Mr. Dyer? Yes. You told Judge Jones that you were not threatened in any way into completing this plea agreement? Yes. He admitted all of that in front of Judge Pepper, so Judge Pepper spent a lot of time with him as well. All of these judges, two prosecutors, several defense attorneys, during this entire proceeding, nobody had any reason to question Mr. Dyer's competence,  Unless there's any further questions from the panel, I'd ask that the judgments of the district court be affirmed in this case. Thank you, Counsel. Thank you. Anything further, Mr. Henderson? No, thank you, Your Honor. Thank you very much. The case is taken under advisement.